IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Marie Assa'ad Faltas, MD, MPH, for herself and *qui tam* and *Ex Rel* the Government of the Arab Republic of Egypt and *qui tam* the United States of America, <br><br>     Plaintiff, <br><br> vs. <br><br>State of South Carolina (SC); Nimrata R. Haley, as SC's Governor; Alan Wilson, as SC's Attorney General; Ken Ard, as SC's Lieutenant Governor and President of its Senate; Glenn McConnell, as President *pro tempore* of SC's Senate and Chair of its Judicial Merit Selection Commission (JMSC); Jean Toal, as administrative head of all SC's state courts; SC's General Assembly; Mark Keel, as Chief of SC's State Law Enforcement Division (SLED); Ken Lancaster, as Acting Head of SC's Department of Public Safety; Leon Lott, as Sheriff of Richland County, SC, and Warden of the Alvin S. Glenn Detention Center; Jeannette McBride, as Richland County's Clerk of Court; William Nettles, as U.S. Attorney for the District of South Carolina (D.S.C.); and the City of Columbia, SC; all solely officially and for injunctive and *qui tam* relief; Leslie Coggiola, officially as SC's Disciplinary Counsel, *solely* for injunctive relief; and both officially and individually the following person: Jake Knotts, falsely bearing the title of SC state senator; Dana Turner, falsely bearing the title of Chief | C/A No.: 3:11-3077-TLW-SVH <br><br><br><br><br><br><br><br><br><br><br>REPORT AND RECOMMENDATION |

|   |   |
|---|---|
| Administrative Judge of the City's Municipal Court (CMC); Randy Scott, falsely bearing the title of the City's Chief of Police; Marion Hanna, falsely bearing the title of CMC judge; Ken Gaines, Robert G. Cooper, and David A. Fernandez, supposed attorneys for the City; and all their subordinates who did and/or intend to injure Plaintiff, all for injunctive relief, *qui tam* damages, and other legal relief, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Plaintiff Marie Assa'ad Faltas ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this civil action alleging constitutional violations under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the district judge. For the reasons that follow, the undersigned recommends that the district judge dismiss the complaint in this case without prejudice and without issuance and service of process.

I.      Factual and Procedural Background

Plaintiff filed a complaint on November 10, 2011, alleging violations of her constitutional rights. [Entry #1]. On November 14, 2011, Plaintiff filed an amended complaint [Entry #5], which corrected scrivener's errors and reiterated the claims presented in the original pleading. Plaintiff also submitted a memorandum in support of her amended complaint. [Entry #5-1].

2

Plaintiff alleges that she is "a Coptic Orthodox Christian Egyptian citizen who, from July 1973 to May 2011, carried an unbroken series of Egyptian passports belonging to the Egyptian Government." [Entry #5 at ¶ 1]. Plaintiff claims that City of Columbia Municipal Court ("CMC") Judge Marion Hanna, "aided by armed subordinates/employees of Defendants Turner, Scott and *the* City," required Plaintiff to surrender one such expired passport, originally issued to her in 1979. *Id.* at ¶ 2 (emphasis in original). Plaintiff alleges that Defendant Hanna took the passport to "(a) force [Plaintiff] to violate Egyptian law; and (b) wipe off it the fingerprints of persons known to Hanna who had stolen it (before later replacing it) during [Plaintiff's] false arrest *in her home* by *the* City on 2 December 2009." *Id.* (emphasis in original). In a footnote, Plaintiff explains that she was "falsely arrested on two counts of harassment 'in the first degree,'" which were remanded to the CMC and reduced to harassment "in the second degree" after a February 2010 jury declared a mistrial in the Richland County Court of General Sessions. *Id.* at n.1. The memorandum in support of the amended complaint further complains of unethical behavior by Judge Hanna who Plaintiff claims "brutally insulted [Plaintiff's] mental health, imprisoned her, robbed her of her passport, and illegally fined her." [Entry # 5-1 at 1]. Plaintiff claims Defendant Hanna "may have been 'ordered' to do so by CMC's Chief Turner." *Id.*

Plaintiff next alleges that the "official defendants' failure to enforce *existing* federal and state laws against discrimination by alienage, race, and natural origin" have caused Plaintiff, "an alien lawfully admitted for permanent residence to the U.S.," "irreparable damages to her person and intellectual property." [Entry #5 at ¶ 3 (emphasis

3

in original)]. Plaintiff, who claims that South Carolina's immigration law, Act 69, is unconstitutional, lists two "related cases" which challenge sections of that act."[1]  *Id.* at ¶¶ 4, 5, 7. Plaintiff further "incorporates herein by reference all her submissions in the related cases" and in five prior cases filed by Plaintiff in this court.[2]  *Id.* at ¶ 6.

Plaintiff names the South Carolina General Assembly members for taking the "constitutionally-mandated 'Oath or Affirmation" with mental reservation to violate it." *Id.* at ¶ 8. Plaintiff alleges that the South Carolina General Assembly members "were not properly installed when they passed SC's Act 69 and the entire act is invalid." *Id.*  The amended complaint also claims that Chief Justice of the South Carolina Supreme Court, Jean Toal, "took the constitutionally-mandated oath or affirmation with mental reservation to violate it as evidenced by the '*nil ultra*' logo on SC's Supreme Court's stationery." *Id.* at ¶ 9. Plaintiff states that the logo "violates the federal constitution in failing to recognize that the U.S. Supreme Court is higher than SC's Supreme Court" and

---

[1] Plaintiff filed motions to intervene in two pending cases which challenge South Carolina's comprehensive immigration law, Act No. 69. *See United States v. South Carolina, et al.*, No. 2:11-02958-RMG (D.S.C. filed Oct. 31, 2011)*; Lowcountry Immigration Coalition, et al. v. Nikki Haley, et al.*, No. 2:11-02779-RMG (D.S.C. filed Oct. 12, 2011). Plaintiff's motions were denied in both cases on December 14, 2011.

[2] Plaintiff seeks to incorporate "all her submissions" in the following cases: *Assa'ad Faltas v. State of South Carolina, et al.*, No. 3:11-809-TLW (§ 2254 habeas petition dismissed without prejudice on July 27, 2011; appeal pending); *Assa'ad Faltas v. Alan Wilson, et al.*, No. 3:11-278-TLW (§ 1983 action dismissed without prejudice on July 28, 2011; appeal pending); *Assa'ad Faltas v. City of Columbia, et al.*, No. 3:10-3294-TLW (§ 1983 action dismissed without prejudice on Aug. 3, 2011; appeal pending)*; Assa'ad Faltas v. City of Columbia, et al.*, No. 3:10-3014-TLW-JRM (currently pending § 1983 action); *Assa'ad Faltas v. State of South Carolina, et al.,* No. 3:10-1985-TLW (§ 1983 action dismissed without prejudice on Oct. 1, 2010).

is a "symptom of SC's Supreme Court's refusal to follow the clear law established by the U.S. Supreme Court in general." *Id.* at ¶¶ 9–10. Plaintiff alleges that the South Carolina Supreme Court's denial of her right to "self-representation" is an example of the court's refusal to follow such clearly established law. *Id.* at ¶'s 10, 19. Plaintiff further claims that the placement of "administrative and judicial powers in the SC's Chief Justice" violates the South Carolina Constitution and the "Guarantee Clause of the U.S. Constitution." *Id.* at ¶ 15.

Plaintiff also challenges "SC's 'Home Rule' Act [which] *in effect* creates 46 or more new states within South Carolina under names of counties and other municipalities and unconstitutionally endows them with power to legislate which is reserved only to the states themselves." *Id.* at ¶ 12 (emphasis in original). Plaintiff alleges that she "suffered the effects of 'Home Rule'" when Richland County and the City of Columbia "falsely" arrested her and applied unconstitutional ordinances against her. *Id.* at ¶ 13.

Finally, Plaintiff sues the United States Attorney for the District of South Carolina, William Nettles, for threatening "to arrest [Plaintiff] for no reason" and yelling "at [Plaintiff] to leave his office when she timely went there for an appointment . . . on 8 March 2011." *Id.* at ¶ 18. Defendant City of Columbia is named in the memorandum supporting the amended complaint for applying "four irrational ordinances" to incarcerate Plaintiff and "ruin her no-criminal conviction record." [Entry #5-1 at 2].

As relief, Plaintiff asks the court to declare: (1) "SC's current General Assembly" improperly seated; (2) "all laws and acts of SC's current General Assembly, specifically Act 69, null and void;" (3) all provisions of the South Carolina Constitution which allow

5

the chief justice to perform administrative functions violative of the separation of powers; and (4) "SC's 'Home Rule' Act unconstitutional." [Entry #5 at 3]. Plaintiff asks the court to order: (1) "Defendant Haley to assume control of SC's Office of Court Administration;" (2) Defendants Haley, Ard, and Toal to promptly create one unified court, place said court under control of the governor, ensure appellate review of all truly judicial rulings, make all necessary conforming amendments to the South Carolina Code of Laws to reflect the new court, and create a separate system for the issuance of arrest and search warrants; (3) "SC's Supreme Court to discard its '*nil ultra*' logo;" (4) Defendant CMC to immediately return Plaintiff's passport; (5) Defendant Coggiola to release all complaints by Plaintiff and the investigations thereof; and (6) such other relief as deemed proper. *Id.* Plaintiff asks the court to prohibit: (1) "all SC state and local government powers from ever taking anyone's passport again;" and (2) "SC's state courts from imposing on [Plaintiff] requirements that are illegally placed on her solely due to her alienage and national origin." *Id*.

II.     Discussion

   A.     Standard of Review

Plaintiff filed her complaint/amended complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action fails to state a claim on which relief may be granted or is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(i), (ii). A finding of frivolity may be

6

made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal theory may be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2)(B). *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *See Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

  B. Analysis

To state a claim under 42 U.S.C. §1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

As an initial matter, Plaintiff attempts to bring this action on behalf of herself "and *qui tam* and *Ex Rel* the Government of the Arab Republic of Egypt (Egypt) and *qui tam* the United States of America (U.S.)." [Entry #5, caption]. While 28 U.S.C. § 1654 allows individuals to "plead and conduct their own cases personally," the statute does not extend that right to represent other parties. *See also Powers v. Ohio*, 499 U.S. 400, 410–11 (1991); *Hummer v. Dalton*, 657 F.2d 621, 625–626 (4th Cir. 1981) (plaintiff's lawsuit was confined to redress for violation of his own personal rights and he was not allowed to act as a "knight-errant" for others). It is true that a private litigant, represented by counsel, may bring an action *qui tam* in the government's name under certain federal statutes. For instance, the False Claims Act, 31 U.S.C. §§ 3279-3733, authorizes *qui tam* suits. *See Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S. Ct. 1885, 1889 (2011). However, such suits may not be brought by a *pro se* complainant. *See U.S. ex rel. Brooks v. Lockheed Martin Corp.*, 237 Fed. Appx. 802, 803 (4th Cir. 2007). Further, a complainant must follow specific procedures to file such a complaint. *See* 31 U.S.C. § 3730(b)(1). In the instant case, Plaintiff is proceeding *pro se* and has not complied with the procedures to file an action *qui tam*. Therefore, Plaintiff may not proceed of behalf of the Egyptian or United States governments in this case.

Next, the amended complaint lists numerous defendants against whom Plaintiff provides no specific factual allegations. A plaintiff must affirmatively show that a defendant acted personally in the deprivation of his or her constitutional rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). When a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. *See Reaves v.*

*Richardson*, No. 4:09-820-TLW-SVH, 2011 WL 2119318, at *6 (D.S.C. March 1, 2011); *Curtis v. Ozmint*, No. 3:10-3053-CMC-JRM, 2011 WL 635302, at *4 n.5 (D.S.C. Jan. 5, 2011).  Although the court must liberally construe the *pro se* complaint, Plaintiff must do more than make mere conclusory statements to state a claim.  *Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994); *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989).  He must allege facts that support a claim for relief.  *Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003).  The amended complaint fails to indicate how the following defendants, personally, or in an official capacity, violated Plaintiff's constitutional rights: (1) Nimrata R. Haley; (2) Alan Wilson; (3) Ken Ard; (4) Glenn McConnell; (5) Mark Keel; (6) Ken Lancaster; (7) Leon Lott; (8) Jeanette McBride; (9) Leslie Coggiola; (10) Jake Knotts; (11) Ken Gaines; (12) Robert G. Cooper; and (13) David A. Fernandez.  Thus, these defendants are entitled to summary dismissal from this action.

      Plaintiff also names the following state court judges as defendants in this action: (1) South Carolina Supreme Court Justice Jean Toal; (2) Chief Administrative Judge of the City of Columbia's Municipal Court Dana Turner; and (3) Columbia Municipal Court Judge Marion Hanna.  South Carolina has a unified judicial system, which includes the supreme court, the court of appeals, courts of general sessions, courts of common pleas, family courts, probate courts, magistrate's courts, and municipal courts.  *See* S.C. Const. art. V, § 1; *City of Pickens v. Schmitz*, 376 S.E.2d 271 (S.C. 1989); *Cort Indus. Corp. v. Swirl, Inc.*, 213 S.E.2d 445 (S.C. 1975).  As such, South Carolina judges have absolute immunity from a claim for damages arising out of their judicial actions. *See Mireles v. Waco*, 502 U.S. 9 (1991); *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985) ("It has long

been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions."). South Carolina judges are also protected from claims for injunctive relief. Section 309(c) of the Federal Courts Improvement Act of 1996 (FICA), Pub. L. No 104-317, 110 Stat. 3847 (1996), amended § 1983 to bar injunctive relief against a judicial officer "for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff does not allege that either of these prerequisites for injunctive relief was met, therefore, any claims for injunctive relief against the judicial defendants are also subject to dismissal. *See Gilmore v. Bostic*, 636 F. Supp. 2d 496, 506 (S.D. W. Va. 2009). Based on the foregoing, it is recommended that Defendants Toal, Turner and Hanna be summarily dismissed.[1]

Plaintiff further alleges that Randy Scott, Chief of Police for the City of Columbia, aided Judges Hanna and Turner in forcing Plaintiff to surrender her passport. [Entry #5, ¶ 2]. However, the "doctrine of absolute quasi-judicial immunity has also been adopted and made applicable to court support personnel because of 'the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]'" *Abebe v. Propes,* No. 0:11-1215-MBS-PJG, 2011 WL 2581385, at *3 (D.S.C. June 3, 2011), adopted, 2011 WL 2600593 (D.S.C. June 29, 2011) (quoting *Kincaid v. Vail*, 969 F.2d

---

[1] To receive declaratory relief, a plaintiff must demonstrate the absence of an adequate remedy at law. *See Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (listing requirements for declaratory relief). The amended complaint fails to demonstrate that Plaintiff has no adequate remedy in state court.

594, 601 (7th Cir. 1992)).  Therefore, Plaintiff's claim against Defendant Scott for obeying a judge's order to confiscate Plaintiff's passport is likewise subject to summary dismissal.

Plaintiff also sues the South Carolina General Assembly ("General Assembly") for being allegedly improperly installed or seated when it enacted Act 69 and for enacting South Carolina's "Home Rule Act."  *See* S.C. Const. Art VIII, §§ 1, *et seq.*; S.C. Code Ann. §§ 4-9-30, *et seq.;* 5-7-10, *et seq.*  However, the Supreme Court has held that "state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities."  *Bogan v. Scott-Harris*, 523 U.S. 44, 48–49 (1998); *see also Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 300–301 (4th Cir. 1995) (recognizing long tradition of granting legislators at all levels of government a broad immunity from suits based upon legitimate legislative activity).  As the General Assembly is immune from suit under § 1983 for enacting the "Home Rule Act" and Act 69, the undersigned recommends the General Assembly be summarily dismissed from this case.  For the same reason, it is recommended that Lieutenant Governor Ken Ard, as President of the Senate; Glenn McConnell, as President *pro tempore* of the Senate; and Jake Knotts as a State Senator, also be summarily dismissed.

Plaintiff's claims against the City of Columbia stem from "at least four irrational ordinances" that have allegedly been used to incarcerate Plaintiff.  [Entry #5-1 at 2]. Plaintiff claims she is considered a criminal if she "contests a parking ticket, if she parks in her own front yard, if she marks her own land, and if she keeps her jury list."  *Id.*  As indicated by Plaintiff in the amended complaint, she has filed previous cases in this court

11

against many of the defendants named in this case. [Entry #5 at ¶ 6]. Three of the cases cited in the amended pleading allege that the City of Columbia has unconstitutionally applied ordinances and/or policies against Plaintiff.[2] First, in *Assa'ad-Faltas v. State of South Carolina, et al.*, No. 3:10-1985-TLW (D.S.C.) (summarily dismissed October 1, 2010), Plaintiff alleges she was arrested and prosecuted pursuant to "unconstitutional SC statutes and City of Columbia ordinances." *Id.* at Entry #1 at ¶ 2. Further, in *Assa'ad Faltas v. City of Columbia, et al.*, No. 3:10-3294-TLW (D.S.C.), Plaintiff complains of the unconstitutional application of the City of Columbia's "'front-yard parking' ordinance."[3] *Id.* at Entry #1 at ¶ 28. Plaintiff also discusses the alleged "improper direction for her to return the jury list." *Id.* at ¶ 29. Plaintiff further challenges the constitutionality of the City of Columbia's policies and procedures in *Assa'ad Faltas v. City of Columbia, et al.*, No. 3:10-3014-TLW-JRM (D.S.C.) (currently pending).[4] *Id.* at Entry #1 at ¶ 5. Plaintiff's allegations in that case involve a parking ticket that she attempted to appeal. *Id.* at ¶ 17. As Plaintiff's claims against the City of Columbia have been, or are currently being, addressed in Plaintiff's prior cases, this duplicate § 1983

---

[2] A district court may take judicial notice of materials in the court's own files from prior proceedings. *See United States v. Parker*, 956 F.2d 169, 171 (8th Cir. 1992); *Fletcher v. Bryan*, 175 F.2d 716 (4th Cir. 1949).

[3] Plaintiff's complaint in Civil Action No. 3:10-3294-TLW, which also named Dana Turner, Robert G. Cooper, and David A. Fernandez as defendants, was summarily dismissed without prejudice on August 3, 2011. Plaintiff filed a notice of appeal on August 29, 2011.

[4] The complaint in Civil Action No. 3:10-3014-TLW-JRM also named Jeanette McBride, Dana Turner, and Marion Hanna as defendants. However, these three individuals were summarily dismissed from the case.

claim against the City of Columbia is frivolous. *See Cottle v. Bell*, No. 00-6367, 2000 WL 1144623, at *1 (4th Cir. Aug. 14, 2000) ("Because district courts are not required to entertain duplicative lawsuits, they may dismiss such suits as frivolous pursuant to § 1915(e)."). Therefore, in the interests of judicial economy and efficiency, it is recommended that the instant claims against the City of Columbia be summarily dismissed. *See Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) ("The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time. Once was sufficient.").

Plaintiff names William Nettles, United States Attorney for the District of South Carolina, for threatening Plaintiff with arrest on March 8, 2011, "for no reason" and for yelling at Plaintiff "to leave his office." [Entry #5 at ¶ 18].[5] However, the use of abusive language, alone, is not a basis for a civil rights action. *See Henslee v. Lewis*, No. 05-6768, 2005 WL 2888220, at *1 (4th Cir. Nov. 3, 2005). While a threat of harm, combined with action designed to carry out the threat, may state a constitutional claim, *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978), verbal threats or abuse, without more, are not actionable. *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990), *aff'd*, 917 F.2d 1302 (4th Cir. 1990). As a verbal threat does not rise to the level

---

[5] Plaintiff's claims against Defendant Nettles are analyzed under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), which established a direct cause of action under the United States Constitution against federal officials for the violation of federal constitutional rights. *Carlson v. Green*, 446 U.S. 14, 18 (1980). *See also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983, therefore, case law involving § 1983 claims is applicable in *Bivens* actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814–20, n.30 (1982).

of a constitutional violation, Defendant Nettles is entitled to summary dismissal from this action.

In regards to Defendant State of South Carolina, the Eleventh Amendment forbids a federal court from rendering a judgment against an unconsenting state in favor of a citizen of that state. *Edelman v. Jordan*, 415 U. S. 651, 663 (1974). Although this language does not explicitly prohibit a citizen of a state from suing his own state in federal court, the Supreme Court, in *Hans v. Louisiana*, 134 U.S. 1 (1890), held that the purposes of the Eleventh Amendment would not be served if a state could be sued by its citizens in federal court. Such protection extends to any state official or employee sued in an official capacity. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (suit against a state official in his or her official capacity is no different than a suit against the state itself). The Eleventh Amendment also generally bars the court from granting injunctive relief against a state or its agencies. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) (holding "the relief sought by plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment"); *Alabama v. Pugh*, 438 U. S. 781 (1978).

However, an exception to Eleventh Amendment immunity was announced in *Ex parte Young*, 209 U.S. 123 (1908), "which permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). A violation is considered ongoing "when a state officer's enforcement of an allegedly unconstitutional state law is threatened." *Id.* (citation omitted).

Plaintiff's challenge to South Carolina's "Home Rule Act" stems from her arrest pursuant to City of Columbia's ordinances. [Entry #5 at ¶ 13]. Thus, she asks this court to "declare SC's 'Home Rule' Act unconstitutional . . . and to declare all local ordinances under SC's Home Rule Act and all SC's municipal and magistrate courts unconstitutional." *Id.* at 3. The amended complaint states that Plaintiff was arrested for harassment in December of 2009. However, the pleading provides no facts to identify the allegedly unconstitutional city ordinance Plaintiff seeks to challenge. Nor does Plaintiff demonstrate that she has been threatened by a state official with future arrest pursuant to a city ordinance or the "Home Rule Act." The amended complaint's conclusory assertions, and mere speculation that Plaintiff could be subject to a future arrest, are insufficient to bring Plaintiff's claims within the *Ex parte Young* exception to Eleventh Amendment immunity. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (specificity is necessary so that state officials are not required to file unnecessary responses to speculative allegations); *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (complaint failed to contain any factual allegations tending to support plaintiff's bare assertion).

Plaintiff further claims that Act 69 ("the Act"), South Carolina's comprehensive immigration law, is unconstitutional "in that it authorizes unreasonable searches and seizures in violation of the Fourth Amendment." [Entry #5 at ¶ 7]. At the time this case was filed, the Act had been enacted, but was not yet effective.[6] As Plaintiff indicates in

---

[6] Act 69 was adopted by the South Carolina General Assembly on June 27, 2011, and portions of the Act became effective on January 1, 2012.

the amended complaint, *id.* at ¶ 4, the constitutionality of the Act is currently being challenged in this court. *See United States v. South Carolina, et al.*, No. 2:11-02958-RMG (D.S.C. filed Oct. 31, 2011)*; Lowcountry Immigration Coalition, et al. v. Nikki Haley, et al.*, No. 2:11-02779-RMG (D.S.C. filed Oct. 12, 2011). Subsequent to the filing of the instant case, the court granted a motion for preliminary injunction, for sections 4, 5, and 6 of the Act, in the above-referenced pending cases.[7] *Id.* As the portions of the Act that mandate law enforcement consideration of a person's legal status in the United States are currently enjoined, Plaintiff's claims against any South Carolina employees or state officials regarding the constitutionality of the Act are recommended for summary dismissal without prejudice at this time.

Finally, it is noted that much of the relief sought by Plaintiff cannot be granted by the court. Plaintiff asks the court to compel various actions by the State of South Carolina and its officials. Under 28 U.S.C. § 1361, district courts are granted "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Thus, on its face, § 1361 extends federal mandamus jurisdiction only to federal officers or employees. *See United States v. Oncology Assocs.*, 198 F.3d 502, 510 (4th Cir. 1999). Should Plaintiff look to 28 U.S.C. § 1651, the "all writs statute," as a source of mandamus authority, relief would still be unavailable. A writ of mandamus is limited to

---

[7] On January 9, 2012, orders were entered to stay further proceedings in these actions pending the resolution by the United States Supreme Court. *See United States v. Arizona*, No. 11-182, 2011 WL 3556224 (U.S. Dec. 12, 2011).

16

cases where federal courts are acting in aid of their respective jurisdictions.  *See* 28 U.S.C. § 1651; *Gurley v. Super. Ct. of Mecklenburg Cnty.*, 411 F.2d 586, 587–588 & nn. 2–4 (4th Cir. 1969).  Because Plaintiff seeks mandamus relief against the State of South Carolina and/or its governmental officials, the court lacks jurisdiction under §§ 1361 and/or 1651 to grant such relief.

III.    Conclusion

Accordingly, it is recommended that the district judge dismiss the complaint in the above-captioned case without prejudice and without issuance and service of process.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

January 27, 2012                                              Shiva V. Hodges
Columbia, South Carolina                                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).